IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMON NUNEZ, an individual, ) | Case No.: |
|                      Plaintiff, ) | |
| v. ) | Judge: |
| ) | |
| NORTHSHORE UNIVERSITY HEALTH ) | Magistrate Judge: |
| SYSTEM, an Illinois corporation, ) | |
|                      Defendant. ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff, RAMON NUNEZ, an individual, by and through his attorneys, for his Complaint against Defendant, NORTHSHORE UNIVERSITY HEALTH SYSTEM ("NORTHSHORE"), an Illinois corporation, and in support thereof states and alleges as follows:

## NATURE OF THE ACTION

1. This is a federal-question action involving statutory claims under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), *et seq.*, and common law and statutory claims under Illinois law. NUNEZ was discharged from his position as an interoperative monitoring neurophysiology technician at NORTHSHORE UNIVERSITY HEALTH SYSTEM on or about September 1, 2021.

## PARTIES

2. Plaintiff, RAMON NUNEZ ("NUNEZ"), is an individual that resides in Illinois, and has been a resident of Illinois at all times relevant to this action.

3. Defendant, NORTHSHORE is an Illinois corporation with its principal place of business in Evanston, Illinois. NORTHSHORE operates a Neurology Center, located at 2650 Ridge Ave, Evanston, IL 60201 ("Neurology Center"), which was where NUNEZ was employed at all relevant times to this action.

1

**JURISDICTION AND VENUE**

4. The Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. §§ 1331 and 1367. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because NUNEZ asserts claim that arise under the laws of the United States, namely, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), *et seq.*

5. The Court has supplemental jurisdiction over NUNEZ'S state-law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to NUNEZ'S federal-question claims that they form part of the same case or controversy.

6. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events giving rise to NUNEZ'S claims occurred in this judicial district.

**STATEMENT OF FACTS**

7. NUNEZ began working for NORTHSHORE in or around February 2000, and worked as an interoperative monitoring neurophysiology technician, until his employment was terminated on or about September 1, 2021.

8. During that time, NUNEZ was a dedicated employee, whose hard work was recognized and appreciated by NORTHSHORE as well as its patients. NUNEZ enjoyed the work that he did, and he planned on staying with NORTHSHORE for the remainder of his career but for the discriminatory actions of— and wrongful termination by— NORTHSHORE.

9. NUNEZ suffers from anxiety and panic attacks, which NUNEZ made NORTHSHORE aware of upon diagnosis on or about May 23, 2021.

10. NUNEZ was continually harassed by two (2) particular supervisors, Sona Zakarian and Elizabeth Bekas, for several years while working at NORTHSHORE.

11. As such, NUNEZ filed five (5) complaints with NORTHSHORE's Human Resources Department regarding Zakarian and Bekas. Many interviews were conducted, and while several co-workers verified and corroborated NUNEZ's complaints, NORTHSHORE's Human Resources Department determined that NUNEZ's complaints against Zakarian were "unfounded."

12. In 2019, NUNEZ requested to use FMLA leave to attend to his sick mother. While **his FMLA leave request was approved** by Aetna, now The Standard (NORTHSHORE's insurance company), Zakarian advised NUNEZ that his request was **denied** and that he would have to utilize his paid time off days (PTO).

13. After being advised by Zakarian to utilize his PTO days, NUNEZ used his PTO, and subsequently exhausted his bank of PTO days, when he should have been able to use FMLA leave.

14. Sometime in late 2019, Zakarian yelled at NUNEZ to "go back to your country!" in an outburst of unwarranted frustration. NUNEZ is Hispanic and was born in Honduras.

15. On April 20, 2021, NUNEZ began experiencing symptoms of COVID-19. He was directed to stay home by NORTHSHORE. During his quarantine period, he was unable to get a "return to work authorization form" signed so that he could return to work.

16. In or around late April or early May 2021, Zakarian informed NUNEZ that during his COVID-19 quarantine period he would need to utilize his PTO. NUNEZ utilized his PTO and was required to submit a "return to work authorization form" to return to work; however, NUNEZ was unable to acquire his doctor's signature on the return-to-work authorization form.

17. When NUNEZ informed NORTHSHORE that he was unable to get his doctor to sign the return-to-work authorization form, Zakarian informed him that if he did not return to work, despite having COVID-19, his absences would be counted as "no call, no show."

18. After that, NUNEZ was in fear of losing his job. As such, NUNEZ began to suffer severe anxiety and panic attacks and sought treatment for his anxiety on or about May 23, 2021.

19. Following May 23, 2021, NUNEZ suffered at least three (3) panic attacks a week due to the hostile work environment at NORTHSHORE.

20. Subsequently, Dr. Andreea Seicean, M.D., Ph.D., M.P.H. treated NUNEZ for his anxiety and panic attacks and determined that he should take an extended personal leave using his accumulated FMLA leave hours. Dr. Seicean faxed documentation of NUNEZ'S condition to NORTHSHORE including an FMLA leave request starting May 24, 2021 through August 31, 2021.

21. On May 28, 2021, NUNEZ received a letter from The Standard, approving his FMLA leave request. The letter stated, "if the leave is to be extended beyond August 31, 2021, additional documentation would be needed from Dr. Seicean."

22. During the time that NUNEZ was on FMLA leave, Zakarian continued speaking disparagingly about NUNEZ to the surgeons, doctors, and nurses that NUNEZ had worked with for over twenty (20) years. Zakarian told these certain coworkers that NUNEZ was "unstable, unreliable, and that his function was impaired."

23. As such, NUNEZ filed complaints with the Illinois Department of Labor ("IDOL") when he felt he was not being taken seriously by NORTHSHORE's Human Resources Department regarding Zakarian's continued harassment.

24. IDOL's investigation into NUNEZ'S complaints about Zakarian resulted in Zakarian's resignation in or about late July of 2020.

25. While on FMLA leave, NUNEZ received a letter from NORTHSHORE that although his FMLA leave was approved until August 31, 2021, his FMLA leave exhausted on July 16, 2021. The letter stated that his position was not protected, and that they were "recruiting to fill" the position.

26. On August 23, 2021, NUNEZ received a letter from The Standard asking for documentation regarding his leave and return to work date. Dr. Seicean faxed the requested documentation twice previously, on August 19, 2021, and earlier on August 23, 2021.

27. On August 31, 2021, The Standard sent NUNEZ a letter requesting the same information Dr. Seicean had previously provided.

28. On September 1, 2021, Dr. Seicean again faxed The Standard including documentation of NUNEZ's disability information, diagnosis, recommended treatment and leave duration.

29. On September 10, 2021, NUNEZ was contacted by co-workers, including Bekas, who informed NUNEZ that NUNEZ had been "terminated" and that his name was taken off the department schedule, despite NUNEZ never actually hearing from NORTHSHORE directly.

30. On September 13, 2021, NUNEZ contacted The Standard by phone. NUNEZ was informed that his FMLA leave was the second time he was placed on FMLA leave while working for NORTHSHORE. When NUNEZ corrected them stating that the first time he requested FMLA leave to care for his sick mother, he was denied. The Standard informed him that the claim had been "paid out." However, NUNEZ never received any compensation for that time period.

31. NUNEZ never received documentation from NORTHSHORE'S Human Resources stating that he was terminated.

32. Further, to date, NORTHSHORE has retained certain original copies of NUNEZ's medical certifications and has refused to return to NUNEZ despite repeated requests from NUNEZ.

33. After his termination, NUNEZ filed a claim with the Equal Employment Opportunity Commission ("EEOC") in or around November 26, 2021, as EEOC Claim No.: 440-2020-01390. *See* Charge of Discrimination, marked as Exhibit A, attached hereto and made a part hereof.

34. On or about December 8, 2021, NUNEZ received his Right to Sue Letter from the EEOC. *See* Notice of Right to Sue, marked as Exhibit B, attached hereto and made a part hereof.

35. NUNEZ timely filed this Verified Complaint within 90 days receipt of the Right to Sue letter pursuant to 42 U.S.C. § 2000(e)-5(f)(1).

**COUNT I**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

NOW COMES the Plaintiff, RAMON NUNEZ, for his Complaint against the Defendant, NORTHSHORE for a violation of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and in support thereof states and alleges as follows:

1-35. NUNEZ restates and realleges paragraphs 1-35 as though fully set forth herein.

36. The ADA prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *See* 42 U.S.C. § 12112.

37. NUNEZ is disabled within the meaning of the ADA because: (1) he has/had physical or mental impairments that substantially limited one or more major life activities; (2) he has/had a record of such impairments; and (3) he was regarded by NORTHSHORE as having such impairments (*see supra*). *See* 42 U.S.C.S. § 12102(1).

38. NUNEZ'S impairments substantially compromised NUNEZ'S ability to function in certain life activities.

39. NUNEZ'S impairments were severe and at times rendered NUNEZ unable to work.

40. NORTHSHORE is a covered employer to which the ADA applies.

41. Once an employee notifies his employer that he is disabled, "at that point, an employer's liability is triggered for failure to provide accommodations." *Curtis v. Costco Wholesale Corp.*, No. 13 C 3432, 2014 U.S. Dist. LEXIS 134182, at *22 (N.D. Ill. Sep. 24, 2014).

42. NORTHSHORE failed to reasonably accommodate NUNEZ when it simply terminated NUNEZ's employment rather than extend his medical leave per his doctor's order. Furthermore, NORTHSHORE failed to reasonably accommodate NUNEZ when it simply

6

terminated NUNEZ's employment rather than find a suitable replacement job for him when he was able to come back from his FMLA leave.

43. NUNEZ suffered from an adverse employment decision because of his disability when he was terminated by NORTHSHORE in September of 2021.

44. Similarly situated employees without a disability were treated more favorably at NORTHSHORE during the relevant period and during COVID-19 period.

45. NORTHSHORE'S termination and disqualification of NUNEZ on the basis of his disability, together with NORTHSHORE'S failure to make an individualized assessment to determine whether NUNEZ could be employed or whether a reasonable accommodation would enable NUNEZ to remain employed by NORTHSHORE violated the ADA.

46. As a result of NORTHSHORE'S actions, NUNEZ has suffered and will continue to suffer both economic and non-economic harm.

Wherefore, Plaintiff, RAMON NUNEZ, respectfully requests that judgment be entered against Defendant, NORTHSHORE, and that this Honorable Court award him the following relief:

A. Back pay in an amount to be determined at trial;
B. Compensatory and consequential damages, including for emotional distress;
C. Punitive damages;
D. Pre-judgment and post-judgment interest at the highest lawful rate;
E. Attorneys' fees and costs of this action;
F. Any such further relief as this Honorable Court finds reasonable.

## COUNT II
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

NOW COMES the Plaintiff, RAMON NUNEZ, for his Complaint against the Defendant, NORTHSHORE, for a violation of the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. § 2611, *et seq.*, and in support thereof states and alleges as follows:

1-46. NUNEZ restates and realleges paragraphs 1-46 as though fully set forth herein.

7

47. The FMLA allows an eligible employee with a serious health condition that renders the employee unable to perform his or her position to take twelve workweeks of leave during each twelve-month period. *See* 29 U.S.C. § 2612(a)(1)(D).

48. NORTHSHORE qualifies as an "employer" as that term is defined in the FMLA because (i) it is engaged in commerce or in any industry or activity affecting commerce, and (ii) it employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. *See* 29 U.S.C. § 2611(4).

49. NUNEZ is an "eligible employee" as that term is defined in the FMLA because NUNEZ worked for NORTHSHORE for at least (i) 12 months, and (ii) 1,250 hours of service with NORTHSHORE during the previous 12-month period before he was terminated on or about September 1, 2021. *See* 29 U.S.C. § 2611(2).

50. NUNEZ had an "entitlement to leave" (*i.e.,* he was eligible for FMLA protections) as defined in the FMLA, because of a serious health condition that made NUNEZ unable to perform the functions of his position with NORTHSHORE. *See* 29 U.S.C. § 2612(1)(D).

51. NUNEZ was entitled to take leave under FMLA due to NUNEZ being eligible for FMLA protections based on his disability pursuant to 29 U.S.C. § 2612(a)(1)(D).

52. NUNEZ properly requested leave from NORTHSHORE on or about May 24, 2021. This Request for Leave was supported by a certification issued by NUNEZ'S health care provider; certification which was provided to NORTHSHORE in a timely manner, and which was sufficient pursuant to 29 U.S.C. § 2613(b).

53. NUNEZ provided sufficient notice of his intent to take leave by sending emails to certain personnel in NORTHSHORE's HR Department.

54. NUNEZ was granted FMLA leave on or about May 24, 2021 through on or about August 31, 2021.

8

55. However, NORTHSHORE interfered with, restrained, and/or denied the exercise of or the attempt to exercise a fundamental right provided to NUNEZ under the FMLA by notifying NUNEZ that it would be terminating his employment even before his FMLA leave was over. *See* 29 U.S.C. § 2615(a)(1).

56. By terminating NUNEZ in September of 2021, NORTHSHORE unlawfully discriminated against NUNEZ pursuant to the FMLA. *See* 29 U.S.C. § 2615(a)(2).

57. As the result of NUNEZ'S termination, NUNEZ has incurred, and is now incurring, and will continue to incur a loss in wages, salary, employment benefits, and other compensation denied or lost to NUNEZ by reason of the violation within the meaning of the FMLA, 29 U.S.C. § 2617(a), in an amount to be proved at trial.

58. These costs include, but are not limited to, lost wages and medical expenses during NUNEZ'S leave of absence, back pay from the effective date of termination, lost employment benefits from the date of termination, the loss of front pay as of the date of this complaint, and any interest on the amount thereon. The costs also include attorneys' fees and court costs.

WHEREFORE, Plaintiff, RAMON NUNEZ, respectfully requests that judgment be entered against Defendant, NORTHSHORE, and that this Honorable Court award him the following relief:

- A. Back pay in an amount to be determined at trial;
- B. Compensatory and consequential damages, including for emotional distress;
- C. Punitive damages;
- D. Pre-judgment and post-judgment interest at the highest lawful rate;
- E. Attorneys' fees and costs of this action;
- F. Any such further relief as this Honorable Court finds reasonable.

## COUNT III
## VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

NOW COMES the Plaintiff, RAMON NUNEZ, for his Complaint against the Defendant, NORTHSHORE, for a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.*, and in support thereof states and alleges as follows:

9

1-58. NUNEZ restates and realleges paragraphs 1-58 as though fully set forth herein.

59. The ADEA applied to NUNEZ'S employment with NORTHSHORE at all times relevant herein.

60. NUNEZ was over 40 years of age at the time NORTHSHORE terminated him. Thus, NUNEZ was a protected class under the ADEA.

61. NUNEZ suffered an adverse employment action when NORTHSHORE terminated his employment.

62. NUNEZ was qualified for his position as an interoperative monitoring neurophysiology technician at the time his employment was terminated by NORTHSHORE.

63. NUNEZ was treated less favorably than others not in the protected class.

64. NORTHSHORE took a subsequent materially adverse action against NUNEZ when it ultimately terminated his employment.

65. A causal connection exists between the protected activity and the adverse action, because NORTHSHORE treated younger employees differently than it treated NUNEZ.

66. In addition to other factors, such as discrimination based on disability and race, age was a motivating factor in NORTHSHORE'S classification and termination of NUNEZ.

67. As a result of NORTHSHORE'S actions, NUNEZ has suffered and will continue to suffer both economic and non-economic harm.

WHEREFORE, Plaintiff, RAMON NUNEZ, respectfully requests that judgment be entered against Defendant, NORTHSHORE, and that this Honorable Court award his the following relief:

- A. Back pay in an amount to be determined at trial;
- B. Compensatory and consequential damages, including for emotional distress;
- C. Punitive damages;
- D. Pre-judgment and post-judgment interest at the highest lawful rate;
- E. Attorneys' fees and costs of this action;
- F. Any such further relief as this Honorable Court finds reasonable.

**COUNT IV**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**DISCRIMINATION ON THE BASIS OF RACE AND NATIONAL ORIGIN**

NOW COMES Plaintiff, RAMON NUNEZ, by and through his attorneys, for his Complaint against Defendant, NORTHSHORE for a violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC § 2000e–2, *et seq.*, and in support thereof states and alleges as follows:

1-67. NUNEZ restates and realleges paragraphs 1-67 as though fully set forth herein.

68. NUNEZ's race is Hispanic, a protected class under Title VII. See 42 USC § 2000e.

69. Specifically, NUNEZ's national origin is Honduras, which makes NUNEZ a protected class under Title VII. See 42 USC § 2000e.

70. NUNEZ is a covered employee to which Title VII applies. See 42 USC § 2000e(a).

71. NORTHSHORE is a covered employer to which Title VII applies. See 42 USC § 2000e(b).

72. NORTHSHORE discriminated against NUNEZ with respect to his compensation, terms, conditions, and/or privileges of employment, because of his race and national origin.

73. NUNEZ'S race and national origin were determining factors and/or motivating factors in NORTHSHORE's adverse employment actions.

74. Discrimination against national origin refers to the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural, or linguistic characteristics of a national origin group.

75. NORTHSHORE uses particular employment practices that cause a disparate impact on Hispanic employees.

76. NORTHSHORE uses a race and national origin motivated decision-making process when analyzing employment matters such as the transfer and discipline of its employees.

77. The elements of NORTHSHORE's decision-making processes are not capable of separation for analysis.

78. NORTHSHORE cannot demonstrate that its racially motivated decision-making processes related to FMLA leave and termination is job related for the position in question, nor is it consistent with a business necessity.

79. The allegations made *supra* and *infra* show, *inter alia*, a pattern of discrimination at NORTHSHORE regarding how Hispanic employees are treated.

80. NUNEZ was qualified to perform his job, possessing the requisite training, education, and skills to be employed as an interoperative monitoring neurophysiology technician at NORTHSHORE.

81. NUNEZ suffered from a materially adverse employment decision because of his race and national origin when he was subjected to discrimination; his claims against Zakarian and Bekas being ignored by HR; and being terminated while still under a covered FMLA leave, etc., which were decisions based on his race and national origin, which had the purpose or effect of substantially interfering with NUNEZ's work performance and of creating an intimidating, hostile, and/or offensive working environment for NUNEZ that seriously affected his psychological well-being.

82. Submission to Zakarian's threats that NUNEZ return to work while he had COVID-19 (or his absences would be considered "no call, no shows" was implicitly made a term or condition of NUNEZ's employment.

83. NUNEZ was harassed by Zakarian and Bekas because he is Hispanic.

84. Non-members of NUNEZ's class (Hispanic) were treated more favorably.

85. Sometime in late 2019, Zakarian yelled at NUNEZ to "go back to your country!" in an outburst of unwarranted frustration.

86. "In order to have a claim of national origin discrimination under Title VII, it is not necessary to show that the alleged discriminator knew the particular national origin group to which the complainant belonged. […] [I]t is enough to show that the complainant was treated differently because of his or her foreign accent, appearance, or physical characteristics." *Karraker v. Rent–ACenter, Inc.*, 411 F.3d 831, 835 (7th Cir.2005).

87. NORTHSHORE's conduct violated Title VII.

88. As a result of NORTHSHORE's actions, NUNEZ has suffered and will continue to suffer both economic and non-economic harm, including emotional damages.

WHEREFORE, Plaintiff, RAMON NUNEZ, respectfully requests that judgment be entered against Defendant, NORTHSHORE, and that this Honorable Court award him the following relief:

A. Back pay in an amount to be determined at trial;
B. Compensatory and consequential damages, including for emotional distress;
C. Punitive damages;
D. Pre-judgment and post-judgment interest at the highest lawful rate;
E. Attorneys' fees and costs of this action;
F. Any such further relief as this Honorable Court finds reasonable.

## COUNT V
## CONVERSION

NOW COMES the Plaintiff, RAMON NUNEZ, by and through his attorneys, for his Complaint against Defendant NORTHSHORE for common law conversion, and in support thereof states and alleges as follows:

1-88. NUNEZ restates and realleges paragraphs 1-88 as though fully set forth herein.

89. When NUNEZ applied to work at NORTHSHORE in 2000, he gave an original copy of his medical certifications from Medical Careers Institute in Chicago, Illinois, that are relevant to his position as a an interoperative monitoring neurophysiology technician to NORTHSHORE.

90. At all times relevant hereto, NUNEZ had a right to the original copies of his medical certifications, which are tangible original documents, and which are essential to work in his industry.

91. NUNEZ also has a right to immediate, absolute, and unconditional possession of the original copies of his medical certifications.

92. NORTHSHORE has taken an unauthorized and wrongful assumption of control, dominion, or ownership over the original copies of NUNEZ's medical certifications.

92. Despite NUNEZ's repeated demands for the return of the original copies of his medical certifications, NORTHSHORE has not returned the medical certifications.

93. As such, NORTHSHORE has wrongfully converted NUNEZ's medical certifications.

WHEREFORE, Plaintiff, RAMON NUNEZ, respectfully requests that judgment be entered against Defendant, and that this Honorable Court award him the following relief:

A. An immediate return of NUNEZ's Medical Certifications; and
B. Any such further relief as this Honorable Court finds reasonable.

## JURY DEMAND

Plaintiff RAMON NUNEZ demands a jury trial in this matter.

Respectfully submitted,
RAMON NUNEZ

By: /s/ Matthew R. Custardo
One of his Attorney

CUSTARDO LAW, LLC
Matthew R. Custardo (ARDC #: 06329579)
2135 City Gate Lane, Suite 300
Naperville, IL 60563
Tel: 630-557-1451 | Fax: 630-557-8050
matt@custardolaw.com

# EXHIBIT A

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>440-2022-01390 |
|---|---|---|

**ILLINOIS DEPARTMENT OF HUMAN RIGHTS** and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**MR. RAMON NUNEZ** | Home Phone<br>**(224) 358-4844** | Year of Birth<br>**1967** |
|---|---|---|

Street Address — City, State and ZIP Code
**2523 LINDA CT, GLENVIEW, IL 60025**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>**NORTHSHORE UNIVERSITY HEALTH SYSTEM** | No. Employees, Members<br>**15 - 100** | Phone No.<br>**(847) 570-2000** |
|---|---|---|

Street Address — City, State and ZIP Code
**2650 RIDGE AVE, EVANSTON, IL 60201**

| Name | No. Employees, Members | Phone No. |
|---|---|---|

Street Address — City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)
☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☐ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **09-01-2021**   Latest: **09-01-2021**
☐ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

**I began my employment with Respondent in or around February 2000. My most recent position was Technician. During my employment, I was harassed. Subsequently, I was discharged on or about September 1, 2021.**

**I believe I was discriminated against because of my age, 54 (YOB: 1967), in violation of the Age Discrimination in Employment Act of 1967, as amended.**

**I believe I was discriminated against because of my national origin, Hispanic, and sex, Male, in violation of Title VII of the Civil Rights Act of 1964, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Ramon Nunez on 11-26-2021 05:24 PM EST** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.  FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (11/09).

**2.  AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.  PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.  ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.  WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT B

EEOC Form 161 (11/2020)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

**To:** Ramon Nunez
2523 Linda ct
Glenview, IL 60025

**From:** Chicago District Office
230 S. Dearborn
Suite 1866
Chicago, IL 60604

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2022-01390 | J'ana Diamond, Investigator | (312) 872-9667 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/msd*                12/8/2021

Enclosures(s)
Julianne Bowman,
District Director

(Date Issued)

cc:
**NORTHSHORE UNIVERSITY HEALTH SYSTEM**
Joyce Milewski
Assitant VP, Human Resources
4901 Searle Parkway
Skokie, IL 60077